| | | | |
|---|---|---|---|
| AO 91 (Rev. 11/11) Criminal Complaint | AUSA: Brant Cook<br>Special Agent: Matthew Allwes | Telephone: (313) 226-9100<br>Telephone: (313) 268-0036 | |

# UNITED STATES DISTRICT COURT
for the
### Eastern District of Michigan

United States of America
v.
Antonio Miguel Roberson

Case No.

Case: 2:21−mj−30120 Assigned To :
Unassigned Assign. Date : 3/11/2021
Description: RE: ANTONIO MIGUEL
ROBERSON (EOB)

## CRIMINAL COMPLAINT

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.

On or about the date(s) of __June 10, 2020 & February 23, 2021__ in the county of __Wayne__ in the __Eastern__ District of __Michigan__, the defendant(s) violated:

| Code Section | Offense Description |
|---|---|
| 18 U.S.C. § 2118(b) | Breaking and Entering a Pharmacy |
| 21 U.S.C. § 841(a) | Possession of Controlled Substances with Intent to Distribute |
| 18 U.S.C. § 924(c) | Carrying of a Firearm in Relation to a Drug Offense |

This criminal complaint is based on these facts:
See attached affidavit

☐ Continued on the attached sheet.

_____
*Complainant's signature*

Matthew Allwes, Special Agent, FBI
*Printed name and title*

Sworn to before me and signed in my presence
and/or by reliable electronic means.

Date: __March 10, 2021__

_____
*Judge's signature*

City and state: __Detroit, MI__

David R. Grand, United States Magistrate Judge
*Printed name and title*

## AFFIDAVIT IN SUPPORT OF A CRIMINAL COMPLAINT

I, Matthew Allwes, being duly sworn, hereby depose and state as follows:

1.  I am a Special Agent with the FBI, and have been since September of 2019. I am currently assigned to the FBI Detroit Division's Violent Crime Task Force (VCTF). Prior to working at the FBI, I was a Border Patrol Agent for four years in Douglas, Arizona. As a Federal Agent, I am authorized to investigate violations of laws of the United States and to execute warrants issued under the authority of the United States.

2.  I have conducted investigations of federal and state violations concerning crimes of violence, firearms, narcotics, and bank theft. I have gained experience through training and everyday work related to these types of investigations. My duties involve the investigation of violent crimes, to include investigations related to narcotics trafficking, the use of cellular devices to commit federal criminal offenses, and the available technology that can be used by law enforcement to assist in identifying the users of cellular devices and their location. I have experience in the investigation, apprehension, and prosecution of individuals involved in federal criminal offenses.

3.  The statements contained in this Affidavit are based on my experience and background as a Special Agent and on information provided by police officers, other agents of the FBI, and other law enforcement personnel, communications

with others who have personal knowledge of the events and circumstances described herein, and information gained through training and experience.

4. I am currently investigating Antonio Miguel ROBERSON, date of birth xx/xx/2000, for violations of federal law, specifically, violations 18 U.S.C. § 2118(b) (Entering the premises of a DEA-registered pharmacy with the intent to steal controlled substances); 21 U.S.C. § 841(a) (Possession of Controlled Substances With Intent to Distribute); and 18 U.S.C. § 924(c) (Possession of a firearm during trafficking of narcotics).

## PROBABLE CAUSE

5. Over the last year, the FBI VCTF has been investigating a string of breaks-in into pharmacies and other businesses appearing to have been perpetrated by a network of individuals working together and using many of the same techniques to gain entry. During the course of the investigation, agents and officers have reviewed surveillance videos from the businesses into which members of the group made entry. The businesses appear to have been broken into in the same fashion by multiple men wearing dark in color hoodies and face masks, using stolen vehicles to ram the buildings, or pry-bars to force the doors of the building. Once entry was made, the men then commit larcenies of the businesses, stealing cash, prescription controlled substances, and merchandise. Based on the review of those videos, I believe that the unknown suspects have worked together and

developed experience in order to successfully burglarize commercial buildings. This group of suspects appear to have mastered breaking and entering into these buildings in a minimal amount of time to avoid the police response to alarms.

### I. Suspect Cellphones

6. In an attempt to identify cell phones that were used by members of the conspiracy during the burglaries, agents and officers obtained a search warrant from T-Mobile for information about the cellular devices that were active and located near 10 different burglaries. Analysis revealed that two phone numbers were each in the area of approximately five of the burglaries. Through legal process, agents identified the phone numbers at issue, including that one phone had gone inactive, but was replaced by a new number. The user of that new phone was determined through investigation to be Antione Hamilton, who later in this investigation confirmed in a statement to agents that he was the user of the phone during the time period of his participation in several of the burglaries noted below. This phone is referred to hereinafter as HAMILTON PHONE.

7. The second phone, which remained active, was (313) 854-8586. This phone was determined during the course of the investigation to be in use by Antonio ROBERSON. In October 2018, ROBERSON pleaded guilty to two counts of breaking and entering and was placed on probation under the Holmes youthful Trainee Act, so those convictions were not entered. These convictions related to

ROBERSON and others breaking into a business by driving an SUV through the business's front doors and attempting to steal a safe, and, in the other incident, breaking into a pharmacy by use of a pry bar. During his probation, which remained active through the time of the burglaries discussed in this affidavit, ROBERSON was in periodic contact with his probation officer through this phone number. The phone number (313) 854-8586 is referred to hereinafter as the ROBERSON PHONE.

8.  On June 15th, 2020 members of VCTF were in the area of 18300 Morang Ave. Detroit, MI. (Citgo Gas Station). Members observed ROBERSON arrive at the location driving a gray Chrysler van with an unreadable temporary registration card in the rear window. ROBERSON was observed entering the location and leaving in the van a short time later. ROBERSON PHONE activity was consistent with ROBERSON's travel before and after arriving at 18300 Morang Ave. Detroit, MI.

9.  Agents with expertise in the area of cell tower and cellphone location analysis reviewed the records provided by the service providers for the ROBERSON PHONE. Based on that analysis, it was determined that during some of the burglaries, the ROBERSON PHONE had utilized towers that provide coverage in the geographic area of the crimes in and around when the crime was reported.

## II. June 6, 2020, Break-Ins

10. On June 6, 2020, at approximately 5:33am, DPD received a call for service for a burglary of a business in progress at the Citizen's Bank at 14501 Gratiot Avenue, in Detroit. Upon the officers' arrival, they observed that the front entry door was being held open by a chair, but found no one inside. A review of video surveillance revealed that three black males with face coverings had pried open the front door with a crowbar to gain entry to the location. Surveillance also showed that the suspects fled the scene prior to police arrival in a black Volkswagen Passat. The total cash loss reported was $1411.72 in U.S. Currency coins. Citizens Bank is insured by the Federal Deposit Insurance Corporation.

   a. Phone records for the ROBERSON PHONE show that a GPS ping locates the phone in the area of the bank at 5:38 AM.

   b. The Passat used in this burglary was reported stolen out of Roseville on May 18, 2020 between approximately 7:05 AM and 7:20 AM. Historical call detail records show that the ROBERSON PHONE utilized a tower in the geographic area of the stolen vehicle location around the time it was stolen.

   c. The HAMILTON PHONE was also in the area of the bank during the time of the burglary. During a later custodial interview with agents,

Hamilton admitted to acting as a look out during the burglary of the Citizen's Bank on June 6, 2020, consistent with the phone data.

11. Approximately 25 minutes after the break-in to the bank, at approximately 5:57 AM, Dearborn Police Department were alerted to a call for service for a breaking and entering alarm at the Medina Pharmacy, 8744 Warren, Dearborn, MI. Upon officer's arrival, a black Dodge Ram and a black Volkswagen Passat were observed. While waiting for additional officers to arrive, 2-3 subjects wearing dark clothing and masks exit the pharmacy and ran to these vehicles. Both vehicles fled the scene at a high rate of speed, and no pursuit was authorized. Dearborn Police Officers later reviewed surveillance video, which showed that the three subjects entered the pharmacy at 5:55 AM using a crowbar. Video also revealed that the subjects attempted to gain access to a gun safe containing narcotic medication. One of the subjects is seen with a sledgehammer. Later a subject is seen taking a white box filled with medications out of the building.

    a. Phone records for the ROBERSON PHONE show a GPS Ping that locates the phone in the area of the pharmacy at 5:53:30 AM. This ping is also consistent with location data for the HAMILTON PHONE during the same time period.

### III. June 10, 2020, Break-Ins

12. On June 10th, 2020, at approximately 5:12am, the Warren Police Department received a call for service for a burglary of a business in progress at the Crownz Pharmacy, 7635 W. 8 mile Rd., a DEA registered pharmacy. Upon officers' arrival they observed the front door pried open, along with the interior security gate pried from the door frame. Officers made entry into the building and found an additional door pried open. None of the burglars was found still inside. Officers were able to review surveillance video, that revealed an illegal entry by three males wearing sweatshirts, masks, and gloves. Two subjects were observed placing items into a garbage bag/can while the third subject watched the front door of the location. VCTF members later spoke with the manager of the location, who reported a loss of $3,406 in controlled substances from the location. The surveillance video also showed the burglars arriving and leaving in a dark colored sedan with silver chrome trim, consistent with the VW Passat used in the June 6, 2020, break-ins noted above.

    a. A review of the data for the ROBERSON PHONE and the HAMILTON PHONE identified that both target phones had "pinged" within a mile of the pharmacy just prior to the reported time of the incident.

13. Less than an hour later, at approximately 6:10am, DPD responded to a call for service for an auto accident involving a structure at 17170 Harper Ave, a

Rite Aid Pharmacy. Officers arrived and observed a black GMC Yukon in the lobby of the location. The rear end of the Yukon appeared to have reversed through the front door of the location. After the location was cleared of any suspects, the key holder for the location met officers at the scene and a walk through of the business was completed to account for any missing items. Officers observed pry marks on the security gate to the pharmacy but entry to the pharmacy area appeared to be unsuccessful and no items appeared to be missing. Surveillance video was viewed by officers on scene which revealed three vehicles including the Yukon enter the parking lot of the location at 6:00am. Four subjects wearing dark colored clothing were observed entering the location after the Yukon was used to force entry at 6:02am. Once inside the location surveillance video showed the suspect unsuccessfully attempt to pry the pharmacy door. Suspects left the location at 6:03am in two of the vehicles.

    a. A review of the cellular records closest to the call for service for the HAMILTON PHONE showed tower activity in the geographic area of the crime between approximately 6:06 – 6:07 AM. The records before and after the time of the crime (approximately 5:52 AM and 6:15 AM) show the phone using towers northwest of the crime scene. Additionally, a review of the "ping" data identified that both the ROBERSON PHONE and the HAMILTON PHONE had the exact

same "ping" within less than a half mile of the pharmacy at approximately 6:07 and 6:08 AM.

b. Additionally, after both reported incidents, both the ROBERSON PHONE and the HAMILTON PHONE utilized towers in a similar geographic area around 15451 Troester, Detroit, MI between approximately 6:15 and 6:20 AM. A federal search warrant of 15451 Troester resulted in two (2) safes being located that were consistent with pharmacy burglaries.

### IV. Searches of ROBERSON's Residence

14. On June 17, 2020, a federal search warrant was executed at 14920 Eastburn Street, ROBERSON's residence. The search warrant uncovered multiple items, to include:

a. Located in the basement next to ROBERSON's bed was a box of rolled Citizens Bank Vault pennies worth $49.50, and two rolls of quarters worth $20.00. VCTF Members showed a picture of the rolled coins to a Citizens Bank employee and the pennies and quarters were confirmed as being consistent with what was stolen from the bank on June 6, 2020.

b. Also found in the basement where ROBERSON sleeps was a Smith and Wesson 9mm handgun. A record check for the firearm revealed the gun was stolen. The gun was sent to the National Integrated Ballistic

Information Network for testing. The comparison revealed that this gun was associated to a shots fired report on June 5Th, 2020. The report states that two black males in a black sedan opened fire in the direction of another vehicle, following which the black sedan fled northeast on Gratiot Ave. Agents reviewed surveillance video in the area, and found video immediately following the time of the shooting of a black sedan, similar in characteristics to a Volkswagen Passat, driving erratically on Gratiot and turning east down Eastburn. The black sedan was seen near ROBERSON's address at 14920 Eastburn.

15. Prior to the execution of the search warrant on June 17, 2020, surveillance observed ROBERSON arrive in a black Dodge Caravan. ROBERSON parked at the corner of Queen and Eastburn, exited the vehicle and walked to his residence at 14920 Eastburn. Pursuant to the federal search warrant, the black Dodge Caravan, which was registered to Antione HAMILTON, was searched. The search revealed three black face masks, red/black gloves, black and blue gloves, an energizer headlamp, a prescription grade bottle of promethazine, and cash.

16. On July 9, 2020, members of VCTF, accompanied by a Michigan Department of Corrections (MDOC) Agent, conducted a home visit to 14920 Eastburn St. Detroit, MI. ROBERSON was on active probation through MDOC at this time. ROBERSON was not at the residence at the time. An occupant of the

home allowed agents into the home. In the basement of the location where ROBERSON commonly slept, VCTF members recovered a Ruger P95 firearm in the same location as the weapon recovered on June 17, 2020.

### V. 2018 Break-Ins

17. During the course of the investigation, agents learned that ROBERSON was also a suspect in multiple pharmacy and store break-ins occurring throughout the Detroit Metro area in 2018.

18. On July 8, 2018, two pharmacy break-ins occurred on Hayes Road, between approximately 3:30 and 4:30 AM. Similar to the 2020 break-ins being investigated by the VCTF, these break-ins were perpetrated by multiple individuals working together, making entry by prying open the doors with crowbars. During the course of the second break-in, officers arrived on the scene in time to find the burglars flee to waiting vehicles, and a pursuit ensued. The pursuit, which began in Sterling Heights, continued at a high rate of speed until the fleeing vehicle crossed into Detroit, at which point pursuit was terminated. Less than a mile away from where the pursuit was terminated, the vehicle was found still with the engine still running by Eastpointe police officers with the doors open and abandoned. It was found to have been reported stolen. A search of the vehicle uncovered prescription narcotics stolen from pharmacies that night, as well as a white t-shirt, consistent with what appeared to have been used as a mask by one of the pharmacy burglars.

Later laboratory analysis for potential DNA on the white tank top developed DNA profiles, which were submitted to the Combined DNA Index System (CODIS). Due to his prior convictions, ROBERSON's DNA is within the CODIS system and available for automated comparison to samples from crimes input into the system. The automated CODIS analysis of the DNA profile from the white tank top to ROBERSON's stored DNA profile showed an apparent match.

19. On July 10, 2018, at 3:32 AM, officers of the Warren Police Department were dispatched to an alarm at 27301 Schoenherr, JP Pharmacy. A later review of surveillance video showed a group of suspects forced entry into the pharmacy, and began filling a trash can with more than two dozen bottles of prescription medications, with which they then fled the pharmacy. A suspect consistent with ROBERSON is seen holding a lid for the trash can that was later recovered. Fingerprints were able to be developed suitable for comparison, and were entered into the Automated Fingerprint Identification System (A.F.I.S). Due to his prior arrests and convictions, ROBERSON's fingerprints are maintained in the system. The print developed from the trash can lid was identified through A.F.I.S. as having been made by ROBERSON.

### VI. ROBERSON's Arrest and Statements

20. On February 23, 2021, ROBERSON was located at a hotel and arrested by the United States Marshals for outstanding warrants related to 2018

pharmacy burglaries. A search of ROBERSON's hotel room recovered a loaded Taurus Pistol Model- G2C, next to 99 suspected narcotics pills that were later identified as Oxycodone Hydrochloride 30mg pills with "M30" imprinted, which are Schedule II controlled substances.

21. On February 24, 2021, ROBERSON was interview by VCTF members at the Warren Police Department. ROBERSON was read his advice of rights, stated he understood those rights, and agreed to speak with agents. ROBERSON was questioned regarding the firearm that was recovered in the hotel room. ROBERSON stated it was his and he said he obtained it about a month ago. ROBERSON stated the narcotics recovered next to the firearm were his and he planned on selling them later that day. ROBERSON was shown a picture of himself holding two rifles, sitting next to three pistols on the hood of a car. VCTF member determined this picture to have been taken on 12/31/2020 through the forensic analysis of a cell phone seized on 12/28/2020. ROBERSON also stated that the picture was from "New Year's." ROBERSON was asked about the firearms in the photos, and he stated that he sold both of the rifles. ROBERSON was asked if any of the pistols in the photo were the gun that was recovered in the hotel room, and ROBERSON pointed out one of the guns as being the gun that was recovered. This picture is inserted below:



22.     As ROBERSON's interview continued, he was asked why he thought he was arrested, and he stated that is was probably for breaking and entering of businesses. ROBERSON was questioned about the recent breaking and entering of gas stations and liquor stores, and he denied those break-ins, stating that he was a "pharm" guy and that he just did pharmacy break-ins. ROBERSON was questioned regarding what items from a pharmacy brought the highest value on the street market. He stated that it was the "Lein bottles." When asked what "Lein" was, he stated it is Promethazine or Promethazine with Codeine. ROBERSON stated that he would sell a sealed bottle for $8,000. ROBERSON claimed to be unable to identify specific pharmacies into which he broke in, because there had been so many break-ins.

## Conclusion

23. Based on the above information, probable cause exists to believe that ANTONIO ROBERSON, violated 18 U.S.C. § 2118(b) (Entering the premises of a DEA-registered pharmacy with the intent to steal controlled substances); 21 U.S.C. § 841 (Possession of Controlled Substances With Intent to Distribute); and 18 U.S.C. § 924(c) (Possession of a firearm during trafficking of narcotics).

*[signature]*
Matthew Allwes
Special Agent
Federal Bureau of Investigation

Sworn to before me and signed in my presence
and/or by reliable electronic means.

*[signature]*
Honorable David R. Grand
United States Magistrate Judge

Dated: ___March 10, 2021___